Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **BRENDAN LANGLEY,** | |
| **Plaintiff,** | **Civil Action No. 23-20602 (ES) (CLW)** |
| v. | **OPINION** |
| **UNITED AIRLINES, INC.** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

This matter arises from an alleged verbal and physical altercation between Plaintiff Brendan Langley and a United Airlines, Inc. employee, Philipe Rivera, at Newark Liberty International Airport that ultimately led to Plaintiff's detention by the Port Authority of New York and New Jersey Police Department ("PAPD"). (D.E. No. 1-1 ("Complaint" or "Compl.")). Plaintiff asserts claims against Defendants United Airlines, Inc. ("United"), United Ground Express Inc. ("UGE"), a subsidiary of United that assists United with the customer check-in process, and Rivera for unlawful discrimination under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, as well as common law claims for assault, battery, false imprisonment, intentional infliction of emotional distress, and defamation based on Rivera's verbal and physical confrontation with Plaintiff. (*Id.* ¶¶ 20 & 94–158). Plaintiff also asserts claims against United and UGE for negligence, and negligent supervision, retention, and training based on Rivera's verbal and physical confrontation with Plaintiff. (*Id.* ¶¶ 159–84). In addition, Plaintiff brings claims against the Port Authority of New York and New Jersey ("Port Authority") as well as officers of Port Authority and PAPD for violations of his civil rights; violations of equal protection; false arrest; negligence; and negligent training and supervision based on Plaintiff's

detention in the aftermath of Rivera's confrontation with Plaintiff.  (*Id.* ¶¶ 175–210).  United and UGE (together, "Defendants") have moved to dismiss all claims asserted against them in Plaintiff's Complaint in Counts I through X.  (D.E. No. 2 ("Motion")).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the following reasons, Defendants' Motion is **GRANTED** and Counts I through X of Plaintiff's Complaint, as asserted against United and UGE, are dismissed *without prejudice*.

## I.    BACKGROUND

### A.    Factual Allegations

According to the Complaint, on May 19, 2022, Plaintiff intended to travel from Atlanta, Georgia, to Calgary, Canada to join the pre-season training camp with the Calgary Stampeders of the Canadian Football League.  (Compl. ¶¶ 25–26).  Plaintiff's travel itinerary from Atlanta to Calgary allegedly had a one-stop layover at Newark Liberty International Airport, where Plaintiff intended to board his connecting flight on United Flight UA8507, which was operated by Air Canada.  (*Id.* ¶¶ 26–29).  Plaintiff alleges that the gate agent refused to allow Plaintiff to board the connecting flight because Plaintiff's vaccination status did not meet the requirements for entry into Canada.  (*Id.* ¶ 30).  Because Plaintiff was unable to board United Flight UA8507, he immediately made arrangements to take a later flight from Newark Liberty International Airport to Calgary that same day.  (*Id.* ¶ 32).  According to the Complaint, to board his next flight, Plaintiff needed to collect the baggage that he had checked in for his original flight itinerary and proceed to the United check-in counters to drop off his baggage for the rebooked flight.  (*Id.* ¶ 33).  Plaintiff alleges that after he proceeded to the baggage claim area, he saw a wheelchair in the vicinity but no baggage carts, and asked an employee of Air Canada whether he could use the wheelchair to transport his

baggage instead. (*Id.* ¶ 34). The Air Canada employee allegedly told Plaintiff that he could use the wheelchair. (*Id.*).

After collecting his baggage and loading it onto the wheelchair, Plaintiff allegedly proceeded to the upper level of the terminal to re-check his baggage at a United check-in counter. (*Id.* ¶ 35). After reaching the upper level, Plaintiff alleges that a United employee by the name of Philipe Rivera approached Plaintiff and "aggressively demanded" that Plaintiff stop using the wheelchair. (*Id.* ¶ 36). Though Plaintiff allegedly attempted to walk past Rivera, Plaintiff claims that Rivera grabbed and yanked Plaintiff's arm from behind and began harassing Plaintiff "in an increasingly intimidating tone and manner." (*Id.* ¶¶ 38–39). To avoid any confrontation, Plaintiff explained to Rivera that he had been denied boarding on his original connecting flight and just wanted to make his next flight without causing any problems. (*Id.* ¶ 41). Plaintiff alleges that Rivera continued to harass Plaintiff even after Plaintiff reached the United check-in counters by "hurling expletives" at Plaintiff. (*Id.* ¶¶ 42–48). Thereafter, Rivera allegedly shoved Plaintiff aggressively, prompting Plaintiff to "defend himself . . . with a single open hand slap to the left side of Rivera's face." (*Id.* ¶ 49). Rivera then immediately "squared back to [Plaintiff], balled his hands in a fist, flared his chest, and continued to verbally harass [Plaintiff]." (*Id.* ¶ 50). Plaintiff alleges that in order to protect himself, he struck Rivera multiple times and shoved Rivera back into a check-in counter. (*Id.* ¶¶ 51–53). Plaintiff then took "several steps backwards, hoping that his encounter with [Rivera] would come to an end." (*Id.* ¶ 54). However, Plaintiff alleges that as he was facing the other way, Rivera again approached Plaintiff and "used his open left hand to strike the right side of [Plaintiff's] face while simultaneously grabbing [Plaintiff's] face and neck to shove [Plaintiff] violently." (*Id.* ¶ 57). Plaintiff then struck Rivera two more times, knocking Rivera into and over the check-in counters. (*Id.* ¶ 59). At that point, Plaintiff alleges that another

United employee walked Rivera to an employee-only area behind the check in counters. (*Id.* ¶ 61).

Thereafter, three or four PAPD officers arrived at the scene and handcuffed Plaintiff. (*Id.* ¶¶ 63–65). Ultimately, the PAPD officers told Plaintiff that they were going to have to take him "in" and transported Plaintiff to a holding facility while they investigated the incident and reviewed security footage. (*Id.* ¶¶ 71–75). Plaintiff alleges that he was detained at the holding facility for approximately five to six hours before being informed that he would be released. (*Id.* ¶ 76). At that point, Plaintiff was handed a Complaint and Summons by one of the PAPD officers, which stated that Plaintiff had assaulted Rivera in violation of N.J.S.A. 2C:12-1(A)1. (*Id.* ¶¶ 78–80). On July 13, 2022, Plaintiff appeared at the Municipal Court of Essex County, Newark, New Jersey to respond to the Complaint; during that appearance, Rivera indicated that he wished to dismiss the complaint against Plaintiff. (*Id.* ¶¶ 91–92). After learning about the incident between Plaintiff and Rivera, the Calgary Stampeders released a press statement that they would be "indefinitely suspending [] Langley" from their team. (*Id.* ¶ 88).

### B. Procedural History

Plaintiff initiated this action in Essex County Superior Court (Law Division), New Jersey on May 19, 2023. (*See* Compl.). Plaintiff's Complaint alleges a total of 14 counts. (*Id.* ¶¶ 94–210). The first seven counts allege common law tort and statutory claims against Rivera, United, and UGE (as well as fictitiously-named defendants) arising out of Rivera's instigation of a verbal and physical confrontation with Plaintiff, including for (i) false imprisonment; (ii) assault; (iii) battery; (iv) intentional infliction of emotional distress; (v) defamation; (vi) violation of the New Jersey Law Against Discrimination ("NJLAD"); and (vii) denial of equal rights under the law in violation of 42 U.S.C. § 1981. (*Id.* ¶¶ 94–158). In counts eight through ten Plaintiff also brings

claims against United and UGE for (viii) negligent retention and supervision; (ix) negligent training; and (x) negligent failure to provide reasonably safe premises. (*Id.* ¶¶ 158–84). Plaintiff also alleges the tenth Count for negligent failure to provide reasonably safe premises against Defendants Port Authority; John Bilich, the chief security officer for Port Authority; and Huntley Lawrence, the chief operating officer for Port Authority. (*Id.* ¶¶ 9–10 & 175–84). Plaintiff's eleventh through fourteenth Counts arise out of Port Authority and the PAPD's arrest and detention of Plaintiff in the aftermath of Rivera's confrontation with Plaintiff and include claims against Port Authority as well as officers of Port Authority and PAPD, including Edward Cetnar, the superintendent of police for PAPD; Louis P. Klock, the deputy superintendent of police for the PAPD; Emilio Gonzalez, the chief of police operations for the PAPD; and E. Boquiren, a police officer for Port Authority. Counts Eleven through Fourteen assert claims for (xi) violations of civil rights; (xii) violations of equal protection; (xiii) false arrest; and (xiv) negligent training and supervision. (*Id.* ¶¶ 6–8, 11 & 185–210).

On September 22, 2023, United and UGE removed the case to this Court. (*See* D.E. No. 1). On September 29, 2023, United and UGE filed a motion to dismiss Counts I through X of Plaintiff's Complaint as asserted against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Motion; D.E. No. 2-1 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 13 ("Opp. Br."); D.E. No. 15 ("Reply")).[1]

---

[1] In Reply, Defendants note that "[t]he Court should be alerted to the fact that Plaintiff's Opposing Brief improperly fails to comply with the typeface and page limitations set forth in Local Rule 7.2(d)." (Reply at 1 n.1). Even if Plaintiff failed to comply with any such requirements, the Court has discretion to overlook such shortcomings "in the interests of judicial efficiency and fairness," and finds it appropriate to do so here. *Agostino v. Costco Wholesale Corp.*, No. 19-8976, 2019 WL 6080242, at *6 (D.N.J. June 24, 2019), *report and recommendation adopted*, No. 19-8976, 2019 WL 6050746 (D.N.J. Nov. 7, 2019).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (internal quotation marks omitted) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks omitted) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record

of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).  Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

## III.    DISCUSSION

United and UGE move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that none of the purported causes of action against United and UGE in Counts I through X of Plaintiff's Complaint state a claim upon which relief can be granted. (Mov. Br. at 6–26).  The Court considers the sufficiency of each of these causes of action in turn.

### A.    Defamation (Count V)

Plaintiff seeks to hold United and UGE liable based on the fact that Rivera allegedly published false statements of fact, omitted material facts, and/or acted with reckless disregard as to their truth or falsity to procure Plaintiff's arrest, detention, interrogation, and criminal charge. (Compl. ¶¶ 132–39).  United and UGE move to dismiss this claim, arguing among other things that Plaintiff has offered only a formulaic recitation of the elements of a defamation claim, has failed to identify the allegedly defamatory statements made, and has offered no supporting factual allegations to make a showing that United or UGE or anyone acting on their behalves made any false statement, much less "*with reckless disregard as to their truth or falsity*."  (Mov. Br. at 15–16 (emphasis in original)).  In opposition, Plaintiff contends that he is not required to allege precise defamatory statements to maintain his defamation claim and maintains that he has instead

sufficiently alleged supporting facts that allow this Court to "infer" that Rivera (and potentially other United and UGE employees) "falsely accused Plaintiff of criminal behavior during their interactions with the PAPD, including, but not limited to, when summoning the PAPD, assisting PAPD officers with their investigation, and answering questions from PAPD officers before and after Plaintiff's arrest and detention." (Opp. Br. at 16). For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiff's defamation claim asserted against them must be dismissed.

To sufficiently state a claim for defamation, a plaintiff must allege (i) the assertion of a false and defamatory statement concerning the plaintiff, (ii) the unprivileged publication of that statement to a third party, (iii) fault amounting to at least negligence by the publisher, and (iv) damages. *DeAngelis v. Hill*, 847 A.2d 1261, 1267–68 (2004) (citation omitted). While "a defamation pleading does not need to cite *precise* defamatory statements, it must . . . provide sufficient notice to the other party of the allegations made against [it]." *Cristelli v. Filomena II, Inc.*, No. 99-2862, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999) (emphasis added). The "pleading must allege the elements of defamation . . . to a degree of sufficient specificity." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011). In other words, a plaintiff "'must plead facts sufficient to identify the defamatory words, their utterer[,] and the fact of their publication. A vague conclusory allegation is not enough.'" *Robles v. U.S. Env't Universal Servs., Inc.*, 469 F. App'x 104, 109 (3d Cir. 2012) (quoting *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986)); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994). "A plaintiff can bolster a defamation cause of action through discovery but not [ ] file a conclusory complaint to find out if one exists." *Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 46 (N.J. 1989) (internal quotation marks and citation omitted).

Even accepting the facts of Plaintiff's Complaint as true, the Court finds that Plaintiff has failed to sufficiently allege a plausible claim for defamation against United and UGE. As stated, to support his claim against United and UGE for defamation, Plaintiff alleges that Rivera allegedly "published false statements of fact, omitted material facts, and/or acted with reckless disregard as to their truth or falsity" "to procure Plaintiff's arrest, detention, interrogation, and criminal charge." (Compl. ¶ 136). However, as Defendants point out (Mov. Br. at 15–16), Plaintiff has not identified any false or defamatory words that were uttered by Rivera or Defendants concerning Plaintiff. Nor has Plaintiff offered any supporting factual allegations to make a showing that United or UGE or anyone acting on their behalves made any false statement or defamatory statements, much less with negligence or reckless disregard as to their truth or falsity. In fact, though Plaintiff alleges that Rivera allegedly published false statements of fact, omitted material facts, and/or acted with reckless disregard as to their truth or falsity "to procure Plaintiff's arrest, detention, interrogation, and criminal charge," he at no point alleges that Rivera or any other employee of United or UGE summoned PAPD to the scene of the altercation or uttered any particular defamatory words to PAPD regarding Plaintiff. (Compl. ¶ 136). Such "vague" and "conclusory" allegations are insufficient to maintain a claim against Defendants for defamation. *F.D.I.C.*, 27 F.3d at 875; *see also Doe v. Sebrow*, No. 21-20706, 2023 WL 2596880, at *3 (D.N.J. Mar. 22, 2023) (dismissing claim for defamation where plaintiff failed to explain the nature of the allegedly defamatory statements or provide any other information to give the defendant notice of the allegations made against him); *Russomanno v. Sunovion Pharms., Inc.*, No. 22-5032, 2023 WL 2649453, at *3 (D.N.J. Mar. 27, 2023), *aff'd*, No. 23-1587, 2023 WL 6374191 (3d Cir. July 17, 2023) (dismissing defamation claim where the plaintiff's complaint failed to allege with specificity that (i) the defendant made false and defamatory statements concerning her and (ii) that defendant made those

statements negligently); *Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (dismissing defamation claim for providing no information "beyond mere conclusory statements" and failing to plead facts sufficient to "identify the defamatory words, their utterer[,] and the fact of their publication").

Plaintiff's cited case law does not compel a contrary conclusion. In opposition, Plaintiff cites to *Wright-Phillips v. United Airlines, Inc.*, No. 20-14609, 2021 WL 1221111 (D.N.J. Apr. 1, 2021), to support his assertion that a defamation pleading does not need to cite precise defamatory statements to state a claim but must only provide sufficient notice to the other party of the allegations made against him. (Opp. Br. at 15–16). The Court, however, finds *Wright-Phillips* distinguishable. In *Wright-Phillips*, the plaintiff suffered an anxiety attack while aboard a United Airlines flight, but the flight attendant refused to supply her with requested oxygen. *Wright-Phillips*, 2021 WL 1221111, at *1–2. Then, when the plane landed in Newark, United employees had the New Jersey Port Authority Police detain and question Wright-Phillips for causing a disruption. *Id.* The plaintiff brought a claim against United for defamation, alleging that its employees' accusations to the police about her disruptive conduct were false. *Id.* at *18–19. The court concluded that it could infer that the United employees must have made some accusation of criminal behavior against the plaintiff because they called the police to report the plaintiff's disruptive conduct and "informing law enforcement that a passenger is a disturbance raises the risk that a person could be detained on suspicion of" committing a criminal offense. *Id.* at *19. Because a statement falsely attributing criminality to an individual is defamatory as a matter of law, the court found that the plaintiff had adequately stated a claim for defamation. *Id.* Here, though Plaintiff alleges that one of the PAPD officers eventually "check[ed] on Rivera" (Compl. ¶ 67), there are no allegations as to how or why PAPD arrived at the scene, or that it was Rivera

who called them, or that Rivera or any other employee of United or UGE even spoke with them about Plaintiff's conduct while at the scene, let alone that Rivera or any other employee of United or UGE uttered any particular defamatory words to PAPD regarding Plaintiff. In fact, Plaintiff alleges that when PAPD officers arrived at the scene it was a witness "who was *not* a United employee nor an employee of any airline, security, or other airport personnel" that accused "Plaintiff of being the aggressor." (*Id.* ¶ 68). As such, unlike in *Wright-Phillips*, Plaintiff has not set forth sufficient facts to provide Defendants with notice of the allegations of defamatory conduct made against them. Therefore, Count V as asserted against United and UGE must be dismissed.[2]

## B. NJLAD (Count VI)

Plaintiff next seeks to hold United and UGE liable for racial discrimination under the NJLAD—specifically, N.J.S.A. 10:5-12(f). (Compl. ¶¶ 140–52; Opp. Br. at 17–19). Defendants move to dismiss this claim, arguing that Plaintiff has failed to allege any facts that indicate that Plaintiff was subject to discrimination because of his race. (Mov. Br. at 17–19). They point out that although Plaintiff alleges he "is African American" (Complaint ¶ 21) and Rivera is "of Latin American decent" (*id.* ¶ 37), the Third Circuit and the District of New Jersey have repeatedly held that mere allegations of difference in race are insufficient to support a claim of racial discrimination. (Mov. Br. at 17). In opposition, Plaintiff argues that an inference that Rivera's conduct was motivated by a racial animus can reasonably be drawn based on Rivera's disproportionate response to observing Plaintiff using a wheelchair. (Opp. Br. at 19). For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiff's NJLAD claim as asserted against United and UGE must be dismissed.

---

[2]     Plaintiff asserts a right to recover against United and UGE for the alleged conduct of Rivera based on a theory of vicariously liability as to his claim for defamation. Nevertheless, as discussed, Plaintiff has failed to state a plausible claim for defamation. And without an underlying claim, there can be no respondeat superior liability. *See Moriarty v. Classic Auto Grp., Inc. et al.*, No. 13-5222, 2014 WL 884761, at *6 (D.N.J. Mar. 6, 2014).

The NJLAD makes it unlawful "[f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the race . . . of such person . . ." N.J.S.A. § 10:5-12(f)(1). "To state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must, (1) 'demonstrate that []he is a member of a protected class'; (2) must 'show that the defendant's actions were motivated by discrimination'; and (3) must demonstrate that 'others not within the protected class did not suffer similar adverse . . . actions.'" *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020) (quoting *Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *7–8 (N.J. Super. Ct. App. Div. Mar. 15, 2011)). Plaintiff has demonstrated that he is a member of a protected class by alleging that he is "African-American." (Complaint ¶ 21). However, he has failed to adequately plead the second and third elements to maintain a NJLAD claim against United and UGE.

To meet the second element, Plaintiff must allege facts sufficient to create an inference that Defendants' actions were motivated by racial discrimination. *See Phillips v. New Jersey Transit*, No. 19-13427, 2021 WL 1661087, at *9 (D.N.J. Apr. 28, 2021). Conclusory allegations of discrimination are insufficient. *Florentino*, 2020 WL 5105291, at *14. Here, Plaintiff makes only conclusory allegations of racial discrimination—that Defendants, including Rivera, subjected him to discrimination "by, among other things, using verbal threats and violent physical force directed specifically at [Plaintiff]," prevented Plaintiff from checking his baggage so he could proceed to boarding his flight without legal justification, and caused him to be detained, arrested, interrogated, and criminally charged because of his race. (Compl. ¶¶ 140–52). However, Plaintiff does not

allege any facts to support his assertion that Rivera or anyone else acting on United or UGE's behalves took these actions against Plaintiff *based on* his race. Although Plaintiff alleges he "is African American" (*id.* ¶ 21) and Rivera is "of Latin American decent," (*id.* ¶ 37), mere allegations of difference in race are insufficient to support a claim of racial discrimination. *Collick v. William Paterson Univ.*, No. 16-0471, 2016 WL 6824374, at *13 (D.N.J. Nov. 17, 2016) (dismissing NJLAD claim for racial discrimination where plaintiff only alleged that parties were different races since "[v]oicing a grievance and identifying the participants by race is not enough, standing alone, to support an inference of racial discrimination"). Accordingly, Plaintiff's allegations that he was discriminated against on the basis of race, without more, is conclusory and does not plausibly establish the second element of a NJLAD claim. *See Reed v. Jersey City*, No. 21-3921, 2022 WL 166462, at *4 (D.N.J. May 24, 2022) ("Plaintiff's allegations that he was discriminated against on the basis of race through racial profiling, without more, is conclusory and does not establish the remaining elements of a NJLAD public accommodation discrimination claim."); *Chong v. City of Hoboken*, No. 21-15825, 2022 WL 3357899, at *4 (D.N.J. Aug. 15, 2022) ("Plaintiff contends, in a conclusory fashion, that by 'booting [his] vehicle' Hoboken unlawfully discriminated against him on the basis of his status as a Korean American. While [p]laintiff has alleged that he is a member of a protected class, [p]laintiff has not alleged a nexus between his race and the booting of his vehicle . . . Without more, Plaintiff has not plausibly alleged a violation of the NJLAD").

Plaintiff has also failed to adequately allege the third element, as he has not alleged sufficient facts to indicate that others outside of his protected class received different treatment from Rivera or anyone else acting on United or UGE's behalves. (*See generally* Compl.). Accordingly, Plaintiff's NJLAD claim for discrimination by a place of public accommodation (Count VI) is dismissed as to United and UGE. *See Florentino*, 2020 WL 5105291, at *14

(dismissing NJLAD claim where the plaintiff "failed to allege facts that indicate others outside of her protected class received different treatment"); *Partovi*, 2011 WL 867275, at *8 (affirming dismissal of plaintiffs NJLAD claim, in part because they "did not allege any facts that indicate that [an individual plaintiff] was treated differently than other students based on her national origin or any other protected characteristic").

Plaintiff's cited case law does not compel this Court to reach a contrary conclusion. To support his claim that he has adequately stated a claim for racial discrimination under the NJLAD, Plaintiff cites to *Wright-Phillips v. United Airlines, Inc.*, No. 20-14609, 2021 WL 1221111 (D.N.J. Apr. 1, 2021). (Opp. Br. at 18–19). The Court, however, finds *Wright-Phillips* distinguishable. As described above, in *Wright-Phillips*, the plaintiff suffered an anxiety attack while aboard a United Airlines flight, but the flight attendant refused to supply her with requested oxygen. *Id.* at *1–2. Then, when the plane landed in Newark, United employees had the New Jersey Port Authority Police detain and question Wright-Phillips for causing a disruption. *Id.* The court found that the plaintiff adequately stated a claim for racial discrimination under the NJLAD because the complaint alleged differential treatment on the basis of race, including that the flight attendant spoke to the plaintiff, who was Black, "with a dismissive and disdainful attitude" and refused to serve her despite her "demonstrable need for help," yet expressed concern for a white passenger "who had not shown any need for such concern." *Id.* at *9–14. In contrast, here, Plaintiff makes only conclusory allegations of racial discrimination and has not alleged sufficient facts to indicate that others outside of his protected class received different treatment from Rivera or any other United or UGE employee.[3]

---

[3] Plaintiff asserts a right to recover against United and UGE for the alleged conduct of Rivera based on a theory of vicariously liability as to his claim under the NJLAD (Count VI). Nevertheless, as discussed, Plaintiff has failed to state a plausible claim under the NJLAD. And without an underlying claim, there can be no respondeat superior liability. *See Moriarty*, 2014 WL 884761, at *6.

### C.    42 U.S.C. § 1981 (Count VII)

Plaintiff next seeks to hold United and UGE liable for racial discrimination in violation of 42 U.S.C. § 1981.  (Compl. ¶¶ 153–58).  Defendants move to dismiss this claim, arguing that Plaintiff has failed to allege any facts that United or UGE, or any other Defendant, intended to discriminate against Plaintiff on the basis of his race.  (Mov. Br. at 19–20).  In opposition, Plaintiff again argues that an inference that Rivera's conduct was motivated by a racial animus can reasonably be drawn based on Rivera's disproportionate response to observing Plaintiff using a wheelchair.  (Opp. Br. at 19–20).  For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiff's claim asserted against them under 42 U.S.C. § 1981 must be dismissed.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  "To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981[.]"  *Pryor*, 288 F.3d at 569 (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).  The plaintiff must also plead that "but for race," he would "not have suffered the loss of a legally protected right."  *Wright-Phillips*, 2021 WL 1221111, at *8 (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (U.S. 2020)).  And to establish a § 1981 claim, a plaintiff must still establish that the defendant treated him "differently than others outside of the protected class who were similarly situated."  *Williams v. Wells Fargo Bank, N.A.*, No. 16-1003, 2016 WL 4370033, at*4 (D.N.J. Aug. 10, 2016) (quoting *Anderson v. Wachovia Mortgage Corp.*, 609 F. Supp. 2d 360, 369–70 (D. Del. Apr. 3, 2009)).

Here, Plaintiff has failed to allege facts that show that Defendants intended to discriminate against Plaintiff because of his race. Again, Plaintiff makes only conclusory allegations of racial discrimination—that Defendants, including Rivera, denied him full and equal treatment under the laws of the United States on the basis of his race by, among other things, using verbal threats and violent physical force directed specifically at Plaintiff, preventing Plaintiff from checking his baggage so he could proceed to boarding his flight without legal justification, and causing him to be detained, arrested, interrogated, and criminally charged. (Compl. ¶¶ 140–58). However, Plaintiff has failed to allege any facts which would allow the Court to infer that discriminatory animus by Rivera or Defendants, or any other employee of United or UGE, motivated these actions. Nor has Plaintiff alleged any facts indicating that Defendants, or anyone else acting on their behalves, treated Plaintiff differently than others outside of the protected class who were similarly situated. While Plaintiff is "not required to prove discriminatory intent at the motion to dismiss stage," these allegations alone do not "raise a reasonable expectation that discovery will reveal evidence of [it]." *Bagic v. Univ. of Pittsburgh*, 773 F. App'x 84, 87 (3d Cir. 2019) (internal quotation marks and citation omitted); *see also Bridgeforth v. Am. Educ. Services*, 412 F. App'x 433, 435 (3d Cir. 2011) (affirming a district court's dismissal of a plaintiff's § 1981 claim "generally alleg[ing] 'race discrimination'" because "merely reciting an element of a cause of action or making a bare conclusory statement is insufficient"); *Williams*, 2016 WL 4370033, at *4 (dismissing Section 1981 claim where plaintiff failed to "establish that [d]efendant treated him differently than others outside of the protected class who were similarly situated" (internal quotation marks and citation omitted)). And again, although Plaintiff alleges he "is African American" (Complaint ¶ 21) and Rivera is "of Latin American decent," (*id.* ¶ 37), as Defendants point out (Mov. Br. at 17), mere allegations of difference in race are insufficient to support a claim

of racial discrimination. *See Abdullah v. Small Bus. Banking Dep't of Bank of Am.*, 532 F. App'x 89, 91 (3d Cir. 2013) ("That the plaintiff and defendant are different races is not sufficient to plausibly state a claim of racial discrimination."); *Holmes v. Fed Ex*, 556 F. App'x 150, 151 (3d Cir. 2014) ("Holmes relies on Benedict's awareness of her race, but that mere awareness, particularly in light of the conclusory nature of Holmes's other allegations, is patently insufficient to raise an inference of discrimination under § 1981."). Plaintiff's cited authority does not compel a contrary conclusion because the challenged complaint in that case alleged specific facts that plausibly supported an inference of discriminatory intent. *See Wright-Phillips*, 2021 WL 1221111, at *9–10 (Section 1981 claim against United survived motion to dismiss where complaint alleged differential treatment on basis of race, including that flight attendant spoke to Black passenger "with a dismissive and disdainful attitude" and refused to serve her despite her "demonstrable need for help," yet expressed concern for white passenger "who had not shown any need for such concern"). Accordingly, Plaintiff's claim for discrimination under 42 U.S.C. § 1981 (Count VII) is dismissed as to Defendants.[4]

### D. Negligent Retention, Supervision and Training (Counts VIII and IX)

Plaintiff next asserts claims against United and UGE for (i) negligent retention and supervision (Count VIII), and (ii) negligent training (Count IX). (Compl. ¶¶ 159–74). Specifically, Plaintiff alleges that Defendants had a duty to exercise reasonable care in the makeup of their workforce and the training of their employees to protect Plaintiff, and other persons, "against the unlawful denial of services, hostile conduct, discrimination, malicious harassment,

---

[4] As stated, "[t]o establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981[.]" *Pryor*, 288 F.3d at 569 (citation omitted). In addition to arguing that Plaintiff has failed to adequately allege an intent to discriminate, Defendants also move to dismiss Plaintiff's § 1981 claim because he has failed to allege discrimination concerning one or more of the activities enumerated in' § 1981. (Mov. Br. at 19–20). Nevertheless, because the Court has found that Plaintiff has failed to adequately allege an intent to discriminate, it need not reach this argument.

and other unlawful tortious conduct" as alleged in the Complaint. (*Id.* ¶¶ 162 & 170). Defendants move to dismiss these claims, contending that Plaintiff has done nothing more than offer a formulaic recitation of the elements of a claim for negligent retention and supervision and negligent training, without providing the factual basis for the conclusory allegations on which this claim is composed. (Mov Br. at 20–24). In opposition, Plaintiff asserts that he has alleged sufficient facts to maintain claims for negligent retention and supervision and negligent training because Defendants had reason to know that their employees would interface with United customers, passengers, and business invitees, and that a failure to properly train employees on conflict management, de-escalation, and intervention creates a risk of harm to such persons, including Plaintiff. (Opp. Br. at 20–21). Furthermore, Plaintiff contends that because numerous United and/or UGE employees stood idly by while Rivera's attacks on Plaintiff continued, the Complaint provides a plausible inference that Rivera and other employees were not properly trained on procedures for handling escalating conflicts between United's workforce and their customers. (*Id.* at 21). For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiff's claims against United and UGE for negligent retention and supervision (Count VIII) and negligent training (Count IX) must be dismissed.

A claim for negligent retention requires the plaintiff to plead facts demonstrating that: "(1) that the employer 'knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons' and (2) 'that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury.'" *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 515 (N.J. 1982)); *Moretz v. Trustees of Princeton*, No. 21-19822, 2023 WL

9017155, at *3 (D.N.J. Dec. 29, 2023). "Critically, timing is important in tort of negligent retention. The employee's incompetence, unfitness, or dangerous attribute must be known to the employer *before* the employee takes the action which causes a plaintiff's injury." *Westberry v. State Operated Sch. Dist. of Newark*, No. 15-7998, 2017 WL 2216395, at *11 n.11 (D.N.J. May 19, 2017) (emphasis in original). For negligent supervision or training, "the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training. That is to say, the plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." *G.A.-H.*, 210 A.3d at 916.

Plaintiff has not stated negligent retention or supervision claims, nor has he stated a claim for negligent training. Here, Plaintiff broadly alleges that Defendants breached their duty of care by failing to properly retain, supervise, and train their workforce because they knew or should have known of the particular unfitness, incompetence, or dangerous attributes of Rivera and that such attributes could result in physical or emotional injuries to Plaintiff, particularly without proper supervision and training. (Compl. ¶¶ 159–74). However, Plaintiff does not allege any facts to support an inference that Rivera, or any other employee of Defendants, was particularly unfit, incompetent, or dangerous before the altercation between Rivera and Plaintiff took place. Nor does he allege that Defendants knew or had reason to know of any unfitness of Rivera or any other employee of Defendants at the time of retention or at any other time before the altercation took place.[5] Further, while Plaintiff offers a conclusory allegation that United and UGE failed to have

---

[5]    Though the Complaint alleges that Defendants should have known of the particular unfitness, incompetence, or dangerous attributes of Rivera because of Rivera's treatment of United's business invitees in a hostile manner throughout the course of his employment, the Complaint offers no factual allegations to support the conclusory allegation that Rivera treated United's business invitees, other than Plaintiff, in a hostile manner. (Compl. ¶ 160). Without additional allegations indicating what conduct Rivera had engaged in with respect to United's business invitees before the altercation with Plaintiff took place, the Court cannot plausibly infer that Rivera was particularly

"anti-harassment and discrimination policies [or] effective formal and informal training" in place (*Id.* ¶ 173), Plaintiff fails to allege any specific facts to indicate that Defendants failed to supervise or train Rivera or any other employee and that there was a reasonable foreseeability that the failure to supervise or train Rivera or any other employee in a certain way would create the risk of harm to Plaintiff alleged here. The Complaint merely parrots the elements for claims of negligent retention, supervision, and training. (*See id.*). However, restatements of the elements of a claim are legal conclusions not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). Accordingly, Plaintiff's claims against United and UGE for negligent retention and supervision (Count VIII) and negligent training (Count IX) must be dismissed. *See Hoffman v. Silverio-Delrosar*, No. 20-13291, 2021 WL 2434064, at *4 (D.N.J. June 15, 2021) ("Here, the [c]omplaint states that Uber and Rasier failed to implement or administer effective policies, screening, training, and supervision. But [p]laintiff provides no specific allegations to support this claim. In fact, [p]laintiff does not even allege that prior to the current incident, Silverio-Delrosar was unqualified or unfit to be an Uber driver. Without sufficient factual support, [p]laintiff fails to plausibly plead a negligent training, supervision, or hiring claim."); *see also Conserve v. City of Orange Twp.*, No. 21-0872, 2022 WL 1617660, at *6 (D.N.J. May 23, 2022) (dismissing negligent supervision and training claim where plaintiffs failed to "specify how and in what way" defendant knew or had reason to know of employee's alleged unfitness or that defendant "could reasonably have foreseen that such qualities created a risk of harm to other persons"); *Beaman v. Bank of Am., N.A.*, No. 21-20561, 2023 WL 4784254, at *19 (D.N.J. July 27, 2023) (dismissing negligent hiring, supervision, and retention claim where the plaintiffs only generally alleged that the defendant failed to conduct background checks or take

---

unfit, incompetent, or dangerous before his employment or that Defendants knew or had reason to know of any unfitness of Rivera.

other security measures when hiring its employees, because such allegations did not indicate that defendant knew or should have known the employees hired and retained were "violent or aggressive" or "might engage in injurious conduct" and were insufficient to establish reasonably foreseeability that the employee would injure a customer in the performance of their duties due to negligent supervision).

Plaintiff's remaining arguments in opposition are unavailing. Plaintiff contends that because numerous United and/or UGE employees stood idly by while Rivera's attacks on Plaintiff continued, the Complaint provides a plausible inference that Rivera and other employees were not properly trained on procedures for handling escalating conflicts between United's workforce and their customers. (Opp. Br. at 21). The Court is not convinced. As in all negligence cases, "[f]oresight, not hindsight, is the standard by which one's duty of care is to be judged." *See Hill v. Yaskin*, 380 A.2d 1107, 1109 (1977) (quoting 57 Am. Jur. 2d Negligence, § 58 (1970)). As already stated, Plaintiff does not allege any facts supporting an inference that Rivera, or any other employee of Defendants, was particularly unfit, incompetent, or dangerous before the altercation between Rivera and Plaintiff took place or that Defendants knew or had reason to know of any unfitness of Rivera or any other employee of Defendants at the time of retention or at any other time before the altercation took place. Nor does Plaintiff allege facts indicating how Defendants failed to supervise or train their employees and that the failure to supervise or train their employees in a certain way would create the risk of harm alleged here. And the Court will not rely on hindsight—the conduct of United employees at the time the altercation between Rivera and Plaintiff took place—to measure Defendants' duty of care. *See Hill*, 380 A.2d at 1109; *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 621 (D.N.J. 2012) ("As with the negligent supervision claim, [p]laintiff's sole evidence of negligent training is surveillance footage from which he argues

a jury can determine if Camara was properly trained. However, absent any evidence as to what Harrah's training policies were and how they failed to consider the type of injury that occurred in this case, the video evidence is purely an example of hindsight being used as the standard to measure Harrah's duty of care.").[6]

### E. Negligent Failure to Provide Reasonably Safe Premises (Count X)

Plaintiff next asserts claims against United and UGE for negligent failure to provide reasonably safe premises. (Compl. ¶¶ 175–84). Specifically, Plaintiff contends that Defendants breached their duty of care by failing to provide reasonably safe premises as indicated by the lack of meaningful intervention during Rivera's escalating hostile, harassing, and tortious conduct towards Plaintiff. (*Id.* ¶ 182). And Plaintiff further alleges that as common carriers, Defendants owed a heightened duty of care to provide reasonably safe premises for its invitees, and that they failed to do so in this case. (*Id.* ¶ 180). Defendants move to dismiss this claim, arguing that in order for Defendants to be held to a heightened duty of care as a common carrier, Plaintiff must present facts that would extend their duty to the area where the subject incident occurred—and here, Plaintiff has failed to allege facts tending to show that the subject incident occurred in an area under United or UGE's control, or to otherwise allege that they were under a duty to provide

---

[6] In raising claims against Defendants for negligent retention and supervision (Count VIII) and negligent training (Count IX), Plaintiff asserts that as common carriers, Defendants owed a heightened duty of care to retain, supervise, and train their employees properly. (Compl. ¶¶ 163 & 171). However, as will be explained further below, although a heightened standard of care is applicable to common carriers "the heightened duty of a common carrier is subject to a standard of reasonableness, and does not apply if the common carrier 'neither knows nor should know of the unreasonable risk, or of the illness or injury.'" *Davis v. Devereux Found.*, 37 A.3d 469, 488 (N.J. 2012) (quoting Restatement (Second) of Torts § 314A cmt. e (1965)). And as stated, Plaintiff does not allege any facts to support an inference that Rivera, or any other employee of Defendants was particularly unfit, incompetent, or dangerous before the altercation between Rivera and Plaintiff took place or that Defendants knew or had reason to know of any unfitness of Rivera or any other employee of Defendants at the time of retention or at any other time before the altercation took place. Plaintiff also provides no specific allegations to indicate that Defendants failed to supervise or train Rivera or any other employee and that there was a reasonable foreseeability that the failure to supervise or train Rivera or any other employee in a certain way would create the risk of harm alleged here. As such, Plaintiff's claims for negligent retention, supervision, and training cannot proceed as pled.

adequate security in such an area.  (Mov. Br. at 25).  Further, Defendants contend that Plaintiff has

failed to provide any factual support for the conclusory allegation that Defendants "could have

foreseen that the failure to provide reasonably safe premises and adequate security[] created a risk

of harm that could result in physical or emotional injuries."  (*Id.*).  In opposition, Plaintiff contends

that the Complaint provides a plausible inference that Defendants negligently failed to provide

reasonably safe premises because "Defendants are lessees of significant portions of Newark

Liberty Airport and [] they had reason to know that its employees will interface with United

customers, passengers, and business invitees, and that its employees may become involved in

disputes with business invitees and United customers."  (Opp. Br. at 22).  For the reasons set forth

below, the Court agrees with Defendants and finds that Plaintiff's claim for negligent failure to

provide reasonably safe premises must be dismissed.

To establish negligence, a plaintiff must demonstrate that the defendant (i) owed the

plaintiff a duty; (ii) breached that duty; and (iii) that the breach caused a "foreseeable resulting

injury."  *Anderson v. Sammy Redd and Assocs.*, 650 A.2d 376, 379 (N.J. Super. App. Div. 1994).

The court may determine the existence and scope of a duty as it is a question of law.  *Id.*;

*Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 770 A.2d 1126, 1132 (N.J. 2001).  A heightened

standard of care is applicable to common carriers, including airlines, as follows:

> Carriers wh[ich] accept passengers entrusted to their care must use
> great caution to protect them, which has been described as the
> 'utmost caution characteristic of very careful prudent men,' or 'the
> highest possible care consistent with the nature of the undertaking,'
> and this may include the relational duty to exercise control of the
> conduct of third persons.

*Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203, 1213 (D.N.J.1992) (quoting *Ricci v.

Am. Airlines*, 544 A.2d 428, 430 (N.J. Super. App. Div. 1988)).  "In the case of a common carrier,

the duty imposed requires not only that the transportation vehicle be kept safe, but that a safe

means of ingress and egress be maintained for the use of the passengers." *Buchner v. Erie R. Co.*, 111 A.2d 257, 258 (N.J. 1955). However, "although private and public common carriers must exercise a duty of care consistent with the nature of [their] undertaking, they are not absolute guarantors of their passengers' safety and they cannot protect against all possible dangers." *Maison v. New Jersey Transit Corp.*, 245 A.3d 536, 552 (N.J. 2021) (internal quotation marks and citation omitted). "[T]he heightened duty of a common carrier is subject to a standard of reasonableness, and does not apply if the common carrier 'neither knows nor should know of the unreasonable risk, or of the illness or injury.'" *Davis v. Devereux Found.*, 37 A.3d 469, 488 (N.J. 2012) (quoting Restatement (Second) of Torts § 314A cmt. e (1965)).

Here, even if the heightened duty of care applied to Defendants' conduct in this case, Plaintiff has failed to state a viable claim against Defendants for negligent failure to provide reasonably safe premises. As stated above, "the heightened duty of a common carrier is subject to a standard of reasonableness, and does not apply if the common carrier 'neither knows nor should know of the unreasonable risk, or of the illness or injury.'" *Davis*, 37 A.3d at 488 (quoting Restatement (Second) of Torts § 314A cmt. E (1965)). Plaintiff has failed to allege sufficient facts to indicate that the sequence of events leading to Plaintiff's injuries were known to or reasonably anticipated by Defendants. As already stated, Plaintiff does not allege sufficient facts supporting an inference that Rivera, or any other employee of Defendants was particularly unfit, incompetent, or dangerous before the altercation between Rivera and Plaintiff took place or that Defendants knew or had reason to know of any unfitness before the subject incident took place. Without such additional facts, the Court cannot plausibly infer that Defendants knew or should have known of the unreasonable risk of injury that occurred in this case. *See, e.g., Cioletti v. Cont'l Airlines, Inc.*, No. 09-3014, 2011 WL 3159136, at *3 (D.N.J. July 25, 2011) (stating that the heightened standard

of care between passenger and carrier does not mean that defendant "is responsible for any and all injuries that are sustained by passengers.  Nothing in the record indicates that the sequence of events leading to [p]laintiff's injury were known or reasonably anticipated"); *Maison*, 245 A.3d at 552 (stating that carriers are liable only for the wrongful acts of co-passengers who present "dangers that are known or are reasonably foreseeable," and noting that in that case where teenager struck plaintiff with a bottle if "one of the teenagers [had] unexpectedly thrown the bottle—in the absence of any provocative conduct or warning—defendants would not be liable under those circumstances").  As such, Plaintiff's claim for negligent failure to provide reasonably safe premises (Count X) asserted against United and UGE must be dismissed.

### F.  Vicarious Liability (Counts I–IV)

Plaintiff also asserts claims against Defendants for (i) false imprisonment (Count I), (ii) assault (Count II), (iii) battery (Count III), and (iv) intentional infliction of emotional distress (Count IV).  (Compl. ¶¶ 94–131).  Plaintiff asserts a right to recover against United and UGE for the alleged conduct of Rivera based on a theory of vicarious liability as to each of these Counts. (*Id.*).  Defendants move to dismiss these claims, arguing, among other things, that Plaintiff has failed to plead facts to establish that United and UGE are vicariously liable for Rivera's alleged conduct as asserted in Counts I through IV of the Complaint.  (Mov. Br. at 6–10).  Specifically, they contend that Plaintiff has failed to allege any facts to indicate that Rivera's alleged conduct in this case fell within the scope of Rivera's employment or was authorized or ratified by United or UGE.  (*Id.* at 8).  Plaintiff opposes, contending that he has adequately pled an employer-employee relationship between United and Rivera to support a theory of vicarious liability against United and UGE and has also alleged sufficient facts to establish that Rivera's conduct fell within the scope of his employment to support a theory of vicarious liability as to Counts I through IV

against United and UGE. (Opp. Br. at 5–9). For the reasons set forth below, the Court agrees with Defendants and finds that Counts I through IV as asserted against United and UGE must be dismissed because Plaintiff has failed to plead facts to establish that United and UGE are vicariously liable for Rivera's alleged conduct as asserted in those counts.

"Although as a general rule of tort law, liability must be based on personal fault," under the doctrine of *respondeat superior* an employer will be held vicariously liable for the tortious conduct "of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003). To establish liability under the theory of *respondeat superior*, a plaintiff must show "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Id.* The term "scope of employment" refers to those acts "which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though improper ones, of carrying out the objectives of employment." *Id.* at 465. Whether the act is foreseeable "is a crucial inquiry." *Davis*, 37 A.3d at 489. The Restatement of Torts § 228(1) sets forth four factors that support a finding that an alleged act is within the scope of employment:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master; and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Torts § 228(1). An employee's act is outside the scope of employment "if it is different in kind from that authorized, far beyond the authorized time or space limits, or

too little actuated by a purpose to serve the master." *Davis*, 37 A.3d at 490 (quoting Restatement of Torts § 228(2) (internal quotation marks omitted)). Courts in New Jersey have recognized that "[o]nly rarely will intentional torts fall within the scope of employment." *Id.*

As stated above, Plaintiff asserts a right to recover against United and UGE on a theory of vicarious liability for the alleged conduct of Rivera as to the following counts: (i) false imprisonment (Count I), (ii) assault (Count II), (iii) battery (Count III), and (iv) intentional infliction of emotional distress (Count IV). (Compl. ¶¶ 94–131). Specifically, Plaintiff asserts that Rivera (as well as United and UGE) is liable under these counts, respectively, because Rivera (i) "confined, detained, and/or restrained [Plaintiff's] liberty and freedom of movement by use of verbal threats and physical force" while Plaintiff attempted to approach the United check-in counters and otherwise "incited, invited, directed, [and] requested" that Plaintiff be arrested and detained by the PAPD; (ii) intentionally caused harmful or offensive contact or apprehension of such contact against Plaintiff; (iii) touched, grabbed, shoved, and struck Plaintiff with the intent to harm Plaintiff; and (iv) engaged in intentional and outrageous conduct towards Plaintiff that went beyond all possible bounds of decency. (Compl. ¶¶ 96, 99, 110, 118 & 127). Nevertheless, though Plaintiff pleads that Rivera "was an employee and/or agent" of United and/or UGE (*id.* ¶ 4),[7] Plaintiff fails to allege that Rivera's alleged wrongful conduct recited above occurred within the scope of Rivera's employment with Defendants such that he may hold Defendants vicariously liable for Rivera's conduct as asserted in in Counts I through IV.

---

[7] In their moving brief, Defendants assert that Rivera was not employed by United at the time of the incident. (Mov. Br. at 8 n.1). Nevertheless, as Plaintiff points out (Opp. Br. at 4–5), at this stage the Court must accept as true Plaintiff's allegation that Rivera "was an employee and/or agent" of United and/or UGE. (Compl. ¶ 4). While Plaintiff bears the burden of pleading his claim, he does not bear the burden of rebutting Defendants' competing factual narrative.

In his Complaint, Plaintiff alleges that United and UGE and its "servants, agents, and/or employees," including Rivera, "support [United's] airport operations, including, but not limited to, assisting [United] check-in agents with the customer check-in process and tagging and handling customer baggage." (*Id.* ¶ 20). However, though Plaintiff alleges in a conclusory fashion that United and UGE "are vicariously liable for the tortious conduct of its employees in that the conduct occurred within the scope, authorized time and location of [his] employment" (*id.* ¶¶ 106, 115, 123 & 131), there are no allegations in the Complaint that indicate that Rivera's actions, which included verbally and physically assaulting a prospective United passenger and restraining that passenger's freedom of movement, were of the kind he was employed to perform; that those actions were motivated by a desire to serve United or further his role as an employee that assists United check-in agents with the customer check-in process; or that his actions were expected or foreseeable in his alleged role of assisting United check-in agents with the customer check-in process. And in fact, as stated above, courts in New Jersey have recognized that "[o]nly rarely will intentional torts" such as those alleged in Counts I through IV "fall within the scope of employment." *See Davis*, 37 A.3d at 489–90 (explaining that foreseeability is critical to scope of employment test). Thus, viewing the allegations as a whole, the Court concludes that the alleged wrongful acts here— as alleged in Counts I through IV of the Complaint—do not sufficiently invoke *respondeat superior*. *See, e.g.*, *Hoffman*, 2021 WL 2434064, at *3 ("Silverio-Delrosar was apparently authorized to perform acts to further his role in picking up passengers and driving them to a scheduled location. Punching a customer is not a foreseeable act, does not further Silverio-Delrosar's role as an employee who transports passengers, and is not the type of force usually used by a person who transports passengers in a car."); *Roe ex rel. Roe v. Rutgers, State Univ. of N.J.*, No. 13-1762, 2013 WL 3446456, at *5 (D.N.J. July 13, 2013) (concluding that Rutgers could not

be held vicariously liable where the alleged wrongdoing by professor, including an assault, "were not foreseeable and could not reasonably be actuated by a purpose of serving Rutgers"); *Blevins v. SEW Eurodrive, Inc.*, No. 05-5261, 2006 WL 1128708, at *6 (D.N.J. Apr. 25, 2006) (finding that employer could not be vicariously liable for intentional tort of physical assault because "the [p]laintiff [could not] demonstrate that Ms. Jones' alleged offensive touching was reasonably connected with her employment and so within its scope. Ms. Jones alleged conduct is not in any way designed to serve a business purpose of [her employer], nor was it something to be expected to arise out of Ms. Jones' employment as an Administrative Manager.").[8] Accordingly, Counts I through IV as asserted against United and UGE must be dismissed.

Plaintiff's remaining arguments in opposition are unavailing. Plaintiff contends that New Jersey courts have unequivocally recognized employers' potential liability for their employees' tortious conduct where the employee's responsibilities include enforcement of the employer's rules. (Opp. Br. at 9 (citing cases)). And here, Plaintiff contends that it is plausible that Rivera's job duties included greeting and assisting members of the public and United customers within the vicinity of United's terminals, and that questioning Plaintiff's use of a wheelchair was "so closely connected with" what Rivera was employed to do, and incidental to it, such that United and UGE can be vicariously liable for Plaintiff's actions. (*Id.* at 8). The Court disagrees. As already stated, generally, intentional torts, as alleged in Counts I through IV of Plaintiff's Complaint, do not fall within the scope of employment. *See Davis*, 37 A.3d at 490. However, New Jersey courts have

---

[8] Though Plaintiff points out that United and UGE do not dispute that Plaintiff sufficiently alleges that Rivera's conduct occurred "substantially within the authorized time limits" (Opp. Br. at 6), Plaintiff has failed to allege, as described above, that Rivera's actions were of the kind he was employed to perform; were motivated by a desire to serve United or further his role as an employee that assists United check-in agents with the customer check-in process; or that his actions were expected or foreseeable in his alleged role of assisting United check-in agents with the customer check-in process. Thus, viewing the allegations as a whole, the Court concludes that the alleged wrongful acts here—as alleged in Counts I through IV of the Complaint—do not sufficiently invoke *respondeat superior*. *See, e.g.*, *Hoffman*, 2021 WL 2434064, at *3.

found employees' acts to be within the scope of their employment when their attempts to counter interference with their employer's business and "enforce their employer's rules instigated violence." *Brijall*, 905 F. Supp. 2d at 622. The New Jersey Supreme Court summarized the common fact patterns of such cases as follows:

> The facts of these cases fit a common pattern. In each, the employee's responsibilities include enforcement of the employer's rules. The employee's attempt to compel compliance with those rules was met with resistance and provoked a physical altercation. The courts attribute the conduct, in whole or in part, to the starting point of each incident: the employee's attempt to serve the employer. Accordingly, the employer was potentially liable under principles of respondeat superior.

*Davis*, 37 A.3d at 491; *see also Mason v. Sportsman's Pub*, 702 A.2d 1301, 1310 (N.J. Super. Ct. App. Div. 1997) (holding that a bouncer was acting within the scope of his employment when his attempt to eject a patron from the bar led to a fistfight); *Schisano v. Brickseal Refractory Co.*, 162 A.2d 904, 907–08 (N.J. Super. Ct. App. Div. 1960) (holding that an employee who was responsible for keeping unauthorized cars out of his employer's private parking lot was acting within the scope of his employment when a fight ensured after the employee asked a man who had parked his car in the lot to move his car). This case, however, is distinguishable. Though Plaintiff generally alleges that United and UGE and its "servants, agents, and/or employees," including Rivera, "support United's airport operations, including but not limited to, assisting United check-in agents with the customer check-in process and tagging and handling customer baggage" and claims that Rivera stated that he "run[s] this airport" (Compl. ¶¶ 20 & 42), Plaintiff does not otherwise allege what Rivera's job responsibilities included or that that Rivera's job responsibilities included the enforcement of any of United's rules. (*See generally id.*). Further, there is nothing in Plaintiff's Complaint to indicate that the manner in which Plaintiff transported his baggage from the baggage terminal to United's check-in counter interfered with United's business and that Rivera's attempt

to prevent Plaintiff from transporting his baggage in a particular manner (here, on a wheelchair) was meant to enforce compliance with United's rules. And as stated above, there are no other allegations in the Complaint that indicate that Rivera's actions, which included verbally and physically assaulting a prospective United passenger and restraining that passenger's freedom of movement based on the manner in which that passenger was transporting his baggage, were something to be expected to arise out of Rivera's employment of assisting United check-in agents with the customer check-in process. Without such additional allegations, the Court cannot plausibly infer that Rivera's actions as alleged in Counts I through IV fell within the scope of Rivera's employment.[9] *See Davis*, 37 A.3d at 489 (explaining that foreseeability is critical to scope of employment test). As such, Plaintiff's arguments are unavailing.

---

[9] To support his contention that Rivera's actions were plausibly within the scope of his employment, Plaintiff cites to *Smith v. Bosco*, 19 A.2d 637 (E. & A. 1941). There, the court held that a bridge employee's attack on the plaintiff, who refused to move his truck when instructed to and threw a brick at the employee's guard dogs, could be considered within the scope of the employee's employment where the bridge employee was responsible for collecting tolls, making minor repairs to the bridge, and also performed other duties around the premises such as repairing the roads and putting up a "no parking" sign to prevent automobiles from parking at the prohibited place. *Smith*, 19 A.2d at 638. Plaintiff points out that the court in that case rejected the employer's argument that the employee was only employed to collect tolls, light lanterns and to make minor repairs to the bridge, but that his duties were not to police the property nor to control traffic, and that it had no knowledge that the employee had been doing so nor that the employee had put up the "no parking" sign. *Id.* In rejecting this argument, the court noted that "[f]rom the proofs the jury could well have found under the clear and comprehensive charge of the court the facts to be that plaintiff's truck was parked at a place which interfered with the business of the [employer] and that it had impliedly authorized [the employee] to prevent such parking." *Id.* In contrast, here, Plaintiff does not allege that the manner in which Plaintiff transported his baggage from the baggage terminal to United's check-in counter interfered with United's business or that Rivera was impliedly authorized to prevent the transport of baggage in this manner. Rather as stated, though Plaintiff generally alleges that United and UGE and its "servants, agents, and/or employees," including Rivera, "support United's airport operations, including but limited to, assisting United check-in agents with the customer check-in process and tagging and handling customer baggage" and claims that Rivera stated that he "run[s] this airport" (Compl. ¶¶ 20 & 42), Plaintiff does not otherwise allege what Rivera's job responsibilities included or that that Rivera's job responsibilities included the enforcement of any of United's rules. (*See generally id.*). As such, the Court finds *Smith* distinguishable.

 Plaintiffs' other cited case law is also distinguishable from the facts of this case for similar reasons and as such does not compel this Court to reach a contrary conclusion. *See Alexander v. Riga*, 208 F.3d 419, 433 (3d Cir. 2000) (finding that apartment building owner could not insulate himself from liability for discrimination in regard to an apartment building owned jointly by him and his wife, and managed for their joint benefit, merely by relinquishing the responsibility for preventing discrimination to his wife, also his managerial agent, where he left his wife in charge of the apartment building with authority to act on behalf of the two of them as a couple); *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 966 (N.J. 1994) (finding that the actions of board's superintendent and principal, specifically their recommendation that plaintiff not be rehired with tenure, were within the scope of their employment where they were high-level employees who were responsible for evaluating plaintiff's job performance, and for

### G. Punitive Damages

Finally, in all ten counts against United and UGE outlined above, Plaintiff seeks punitive damages as a result of Defendants' alleged conduct. (Compl. ¶¶ 94–184). However, because Plaintiff has failed to allege a cognizable claim against United or UGE, his request for punitive damages as against United and UGE is dismissed. Indeed, Plaintiff is not entitled to such an award, without having asserted an "independent cause of action for compensatory damages." *See O'Connor v. Harms*, 266 A.2d 605 (App. Div. 1970); *see also Gomez v. H&M Int'l Transp., Inc.*, No. 17-0231, 2017 WL 1483306, at *3–4 (D.N.J. April 24, 2017) (dismissing punitive damages request against one of the defendants in the absence of an adequately pled underlying violation against that defendant); *Karlson v. Dematic Corp.*, No. 16-0321, 2016 WL 4487849, at *4 (D.N.J. Aug. 24, 2016) (dismissing a request for punitive damages in a products liability suit, where the plaintiff "failed to state a claim for relief under the NJPLA or common law").

## IV. CONCLUSION

Based on the foregoing, Defendants' motion (D.E. No. 2) is **GRANTED** and Counts I through X of Plaintiff's Complaint as asserted against United and UGE are dismissed *without prejudice*. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) (Dismissal of a complaint with prejudice is a "'harsh remedy'" that "is [only] appropriate if amendment would be inequitable or futile."). An appropriate Order follows.

Dated: June 28, 2024

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

making tenure recommendations); *Donio v. United States*, 746 F. Supp. 500, 506 (D.N.J. 1990) (finding that statements made by prosecutor to reporter concerning a case were defamatory statements made within the scope of employment because it is within the scope of a prosecutor's office to issue press statements and "such statements are authorized as part of a prosecutor's regular responsibilities in administering the law").